PRICE MEESE SHULMAN & D'ARMINIO, P.C.
50 Tice Boulevard, Suite 380
Woodcliff Lake, NJ 07677
Tel. (201) 391-3737
Fax (201) 391-9360
Gregory D. Meese (GM-8738)
gmeese@pricemeese.com
Attorneys for Plaintiff Cross River Fiber LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CROSS RIVER FIBER LLC,<br><br>                          Plaintiff,<br><br>vs.<br><br>TOWNSHIP OF NORTH BERGEN, NEW JERSEY and NORTH BERGEN TOWNSHIP BOARD OF COMMISSIONERS,<br><br>                          Defendants. | Civil Action No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND EXPEDITED REVIEW PURSUANT TO 47 U.S.C. § 332(c)(7)(B)(v)** |

## COMPLAINT
### FOR DECLARATORY AND INJUNCTIVE RELIEF
### AND EXPEDITED REVIEW PURSUANT TO 47 U.S.C. § 332(c)(7)(B)(v)

Plaintiff, Cross River Fiber LLC ("Plaintiff" or "Cross River"), by its undersigned attorneys, as and for its Complaint against the Township of North Bergen, New Jersey and The North Bergen Township Board of Commissioners (collectively, the "Township" or "Defendants"), respectfully alleges as follows and hereby petitions this Court to: conduct an expedited review of Defendants' failure to act on applications submitted by Cross River for access to the public rights-of-way for authorization to place, construct, or modify personal wireless service facilities, in violation of Federal and New Jersey Law, and to grant injunctive and declaratory relief to Cross River permitting access to the public rights-of-way.

1

## INTRODUCTION AND REGULATORY FRAMEWORK

1.      In 1996, Congress enacted the Telecommunications Act of 1996, No. 104-104, 110 Stat. 56 (1996), which amended the Communications Act of 1934, codified in 47 U.S.C. §151 et seq. (hereinafter, the "Act" or the "TCA") as a "pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services to all Americans . . . ."[1]

2.      Congress has declared that there is a need for wireless communication services, including "personal wireless services,"[2] as set forth in the Act, and the rules, regulations and orders of the Federal Communications Commission ("FCC") promulgated pursuant thereto.  In order to foster its pro-competitive, deregulatory national policy, Congress included provisions in the Act that encourage competition by restricting the regulation of the placement of personal wireless service facilities by State and local governments and instrumentalities thereof.

3.      Section 332(c)(7) of the Act imposes substantive and procedural limitations on State and local governments and instrumentalities thereof to ensure that the Act's pro-competitive goals are not frustrated and it expressly preempts any action or inaction by State or local governments or their agents that effectively prohibits the provision of wireless services.

4.      Section 332(c)(7) of the Act strikes a balance between "preserv[ing] the traditional authority of state and local governments to regulate the location, construction, and modification of

---

[1] The Act, S. Rep. 104-230, at 1 (Feb. 1, 1996) (Conf. Report).

[2] Personal wireless service facilities include "Small Wireless Facilities," as defined by the Federal Communications Commission ("FCC") in 47 C.F.R. § 1.6002(l).

wireless communications facilities like cell phone towers"[3] and "reduc[ing] . . . the impediments imposed by local governments upon the installation of facilities for wireless communications."[4]

5.     While Section 332(c)(7)(A) of the Act preserves "the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities," that authority is subject to significant limitations – including Section 332(c)(7)(B)(ii) of the Act, which requires States and local governments or instrumentalities thereof to "act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with [the relevant] government or instrumentality, taking into account the nature and scope of such request."[5]

6.     The purpose of Section 332(c)(7)(B)(ii) of the Act is to counteract delays in consideration of wireless facility siting applications by State or local governments or their agents, which thwart timely rollout and deployment of wireless service.

7.     Section 332(c)(7)(B)(v) of the Act provides that:

> any person adversely affected by any . . . failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such . . . failure to act, commence an action in any court of competent jurisdiction.

8.     As the Federal agency tasked with implementing the Act, the FCC has the authority to promulgate rules and regulations to achieve the purposes of the Act.

---

[3] *T-Mobile S., LLC v. Township of Roswell*, 574 U.S. 293, 300; 135 S. Ct. 808, 814; 190 L.Ed.2d 679 (2015).

[4] *Township of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115; 125 S. Ct. 1453, 161 L.Ed.2d 316, (2005)

[5] 47 U.S.C. § 332(c)(7)(B)(ii).

9.      Pursuant to its statutory authority, in November 2009, the FCC adopted an initial order establishing what constitutes a "reasonable period of time" under the Act for a State or local government or instrumentality thereof to take action on an application for a wireless communications site.[6]

10.     In the 2009 Shot Clock Order, the FCC recognized that "personal wireless service providers have often faced lengthy and unreasonable delays in the consideration of their facility siting applications, and that the persistence of such delays is impeding the deployment of advanced and emergency services."[7]  In so holding, the FCC sought to promote the deployment of broadband and other critical wireless services.[8]

11.     The FCC noted that the purpose of this "shot clock deadline" was to give State or local governments or instrumentalities thereof, "a strong incentive to resolve each application within the timeframe defined as reasonable, or they will risk issuance of an injunction granting the application. In addition, specific timeframes for State and local government deliberations will allow wireless providers to better plan and allocate resources. This is especially important as providers plan to deploy their new broadband networks."[9]

12.     On September 26, 2018, the FCC revised its Shot Clocks and policy.[10]

---

[6] *In the Matter of the Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(B) to Ensure Timely Siting Review and to Preempt Under Section 253 State and Local Ordinances that Classify All Wireless Siting Proposals as Requiring a Variance*, WT 08-165, FCC 09-99, 24 F.C.C.Rcd. 13,994, ¶ 71, Nov. 19, 2009. (the "2009 Shot Clock Order").

[7] 2009 Shot Clock Order, p. 14,005, ¶ 32.

[8] *Id.*

[9] *Id.* at p. 14,000, ¶38.

[10] *In the Matter of Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment; Accelerating Wireline Broadband Deployment by Removing Barriers*

13.     It is Third Report and Order the FCC "adopt[ed] two new Section 332 shot clocks for personal wireless service facilities known as Small Wireless Facilities—60 days for review of an application for collocation of Small Wireless Facilities using a preexisting structure and 90 days for review of an application for attachment of Small Wireless Facilities using a new structure."[11]

14.     The FCC's "Shot Clock" timelines are codified at 47 C.F.R §1.6003.

15.     The FCC also "determined that failure to meet the applicable time frame enables an applicant to pursue judicial relief within the next 30 days."[12]

16.     The Shot Clock Order further codified that:

> *Timely action required.* A siting authority that fails to act on a siting application on or before the shot clock date for the application, as defined in paragraph (e) of this section, is presumed not to have acted within a reasonable period of time.[13]

17.     The presumptively "reasonable period of time" runs from when an application is first submitted or proffered.[14]

18.     Under the FCC's Rules and Regulations, a determination of incompleteness of a siting application tolls the shot clock only if the State or local government or instrumentality thereof provides notice to the applicant in writing within 10 days of the submission of the application, specifically identifying all missing information, and specifying any code provision,

---

*to Infrastructure Investment*, WT 17-29, WC 17-84, FCC 18-133, 33 FCC Rcd. 9,088, Sept. 26, 2018. ("Third Report and Order"). The Third Report and Order became effective as of January 14, 2019. 83 Fed. Reg. 51,867 (2018). The Third Report and Order was affirmed, in part, in *City of Portland v. United States,* 969 F.3d 1020 (9th Cir. 2020).

[11] Third Report and Order at p. 9,142, ¶ 105.

[12] *Id.* at p. 9,104, ¶ 19.

[13] 47 C.F.R. § 1.6003(a).

[14] 47 C.F.R. § 1.6003(e).

ordinance, application instruction, or otherwise publicly-stated procedures that require the information to be submitted.[15]

19.     The expiration of the shot clock period without a determination by the State or local government or instrumentality thereof constitutes a "failure to act" under the Act and allows the applicant to seek redress in federal court pursuant to 47 U.S.C. § 332(c)(7)(B)(v).

20.     The Act prohibits State and local authorities from regulating the construction of personal wireless service facilities "on the basis of the environmental effects of radio frequency transmissions to the extent that such facilities comply with the [Federal Communications Commission's] regulations concerning such emissions." 47 U.S.C. §332(c)(7)(B)(iv).

21.     In addition, Section 253 of the Act prohibits State or local authorities from erecting barriers that may prohibit or may have the effect of prohibiting the ability of any entity to provide telecommunications services, including taking action or inaction that results in an unreasonable delay in the deployment of the provider's facilities and provision of telecommunications services.[16] In particular, Section 253(a) of the Act provides that "[n]o State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service."

22.     In its Third Report and Order, the FCC also

> confirm[ed] that our interpretations today extend to state and local governments' terms for access to public ROW that they own or control, including areas on, below, or above public roadways, highways, streets, sidewalks, or similar property, as well as their terms for use of or attachment to government-owned property within such ROW, such as new, existing and replacement light poles,

---

[15] 47 C.F.R. § 1.6003(d)(1).

[16] 47 U.S.C. § 253(a).

traffic lights, utility poles, and similar property suitable for hosting Small Wireless Facilities.[17]

23.     Section 253(c) of the Act requires State and local government authorities to "manage the public rights-of-way" on a "competitively neutral and nondiscriminatory basis."

24.     Here, Cross River submitted certain applications to the Defendants on or about May 24, 2021, for the installation of seventeen (17) Small Wireless Facilities on new utility poles within the public rights-of-way within the Township's jurisdiction (the "May Applications").

25.     Defendants did not respond in writing to Cross River within the first 10 days identifying that any information was missing in the May Applications.

26.     On or about July 14, 2021, Cross River submitted four (4) additional applications for the installations of Small Wireless Facilities on new utility poles within the public rights-of-way within the Township's jurisdiction (the "July Applications").[18]

27.     On or about July 23, 2021, Plaintiff received a letter from Thomas R. Kobin, Esq., the Township Attorney of Defendant Township of North Bergen (the "July Letter") concerning the May Applications and July Applications.

28.     The July Letter set forth various alleged deficiencies in the May Applications and July Applications and purported to deny all of said applications.

29.     On or about September 17, 2021 and October 4, 2021, Plaintiff submitted revised applications to address the issues raised in the July Letter (the "Applications").

---

[17] Third Report and Order at p. 9.134, ¶ 92.

[18] Each of the proposed facilities met the definition of a Small Wireless Facility.  47 C.F.R. § 1.6002(l).

30.     The Applications proposed the installation of seventeen (17) Small Wireless Facilities to be placed on new utility poles within the public rights-of-way within the Township's jurisdiction and the placement of two (2) Small Wireless Communications Facilities on existing utility poles within the public rights-of-way within the Township's jurisdiction (collectively, the "Applications").

31.     Defendants did not respond in writing to Cross River within the following ten (10) days identifying that any information was missing in the Applications.

32.     On or about November 23, 2021, Plaintiff received another letter from the Township Attorney for Defendant Township, Thomas R. Kobin, Esq., which purported to deny the Applications (the "November Letter").

33.     Upon information and the belief, neither the May Applications, the July Applications nor the Applications were the subject of formal action by the "siting authority" of the Township of North Bergen as defined at 47 C.F.R. § 1.6002(k).[19]

34.     Upon information and the belief, neither the May Applications, the July Applications nor the Applications were the subject of any official action taken by Defendants at a public hearing or any official municipal action within the ninety (90) day Shot Clock required by 47 C.F.R. § 1.6003(a).

---

[19]  Federal law defines "siting authority" as "a State government, local government, or instrumentality of a State government or local government, including any official or organizational unit thereof, whose authorization is necessary prior to the deployment of personal wireless service facilities."   47 C.F.R. § 1.6002(k).

35.    The Township Attorney is not the "siting authority" as defined in 47 C.F.R. §1.6002(k).

36.    Neither the July Letter nor the November Letter indicate that the Township Attorney wrote on behalf of the "siting authority" of the Township of North Bergen as defined in 47 C.F.R. §1.6002(k).

37.    Neither the July Letter nor the November Letter from the Township Attorney constitutes official municipal action, nor a proper denial of Plaintiff's Applications, because official action was not taken by the "siting authority" of the Township of North Bergen as defined at 47 C.F.R. §1.6002(k).

38.    Even if the Township Attorney's letters are deemed to be action on behalf of the Township's "siting authority", the reasons for the denial of Plaintiff's Applications stated in the letter are invalid, unlawful, arbitrary, capricious and unreasonable because (1) the TCA preempts regulation on the basis of the environmental effects of radio frequency emissions (47 U.S.C. §332(c)(7)(B)(iv); (2) Defendants failed to identify any information that was missing from the Applications as being a required completeness items within 10 days of their receipt of the Applications as required by 47 C.F.R. §1.6003(d)(1); and (3) the height of each of the proposed facilities is consistent with the height allowed under federal law.

39.    Plaintiff has filed this action within 30 days of Defendants' action, or failure to act, upon Plaintiff's Applications and therefore this action filed on this date is timely.

40.    Under Sections 253(a) and 332(c)(7)(B) of the Act, Cross River is entitled to injunctive and declaratory relief permitting it access to the public rights-of-way set forth in the Applications to construct its personal wireless service facilities under the Act.

## JURISDICTION AND VENUE

41.     This Court has subject matter jurisdiction over this action pursuant to: (a) 47 U.S.C. §§ 253 and 332(c)(7)(B) of the Act because Cross River has been adversely affected and aggrieved by Defendants' actions in violation of those provisions of the Act; and (b) 28 U.S.C. § 1331 because this is a civil action that presents federal questions arising under the Act.

42.     This Court has jurisdiction to order declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and has supplemental jurisdiction with regard to any state law claims pursuant to 28 U.S.C. § 1367.

43.     This Court has personal jurisdiction over the Defendants, and venue is proper in this Court, as the Defendants conduct or have conducted continuous, systematic, and routine business within the County of Hudson in the State of New Jersey and within the jurisdiction of this Court, pursuant to 28 U.S.C. § 110.

44.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to this action occurred in the District of New Jersey.

## EXPEDITED PROCEEDING

45.     Pursuant to 47 U.S.C. § 332(c)(7)(B)(v) of the Act, this Court "shall hear and decide [this] action on an expedited basis."

## THE PARTIES

46.     Cross River is a Delaware limited liability company and maintains its principal place of business at 461 Headquarters Plaza, Morristown, New Jersey.

47.     Cross River is a communications infrastructure company serving the New York and New Jersey metropolitan region and holds a Certificate of Public Convenience and Necessity ("CPCN") from the New Jersey Board of Public Utilities authorizing it "to provide local exchange and interexchange telecommunications services throughout the State of New Jersey."[20]

48.     As a holder of a CPCN, Cross River is a "Public Utility" as defined under New Jersey law.[21]

49.     Cross River builds, owns, and operates wholesale fiber optic and other facilities that improve the coverage and capacity of existing and new wireless networks.

50.     FCC-licensed wireless service providers — such as Verizon Wireless, AT&T and Sprint/T-Mobile (each a "Carrier") — pay Cross River to use its utility poles and other facilities to assist them in providing wireless telecommunications services to retail consumers.

51.     In the Applications, Cross River proposed to install Small Wireless Facilities on behalf of an FCC-licensed communications provider.

52.     Defendant Township of North Bergen, New Jersey is a municipal corporation duly organized under the laws of the State of New Jersey with a principal place of business at 4233 Kennedy Boulevard, North Bergen, New Jersey 07047 in the County of Hudson.

53.     Upon information and belief, Defendant The North Bergen Township Board of Commissioners is the governing body of Defendant Township of North Bergen, New Jersey with

---

[20] *In the Matter of the Petition of Cross River Fiber, Inc for Authority to Provide Local Exchange and Interexchange Telecommunications Services Throughout the State of New Jersey*, N.J. Bd. of Pub. Util., Docket No. TE12040297, June 18, 2012.  Cross River reorganized from a corporation into a limited liability company on November 1, 2014.

[21] N.J. STAT. ANN. § 48:2-13(a).

authority under federal, New Jersey and Township laws to manage the public rights of way and maintains its principal place of business at 4233 Kennedy Boulevard, North Bergen, New Jersey 07047 in the County of Hudson.

## FACTS COMMON TO ALL COUNTS

54.    On or about May 24, 2021, Cross River submitted certain applications to Defendants for the installation of seventeen (17) Small Wireless Communications Facilities to be installed on new utility poles within the public rights-of-way within the Township's jurisdiction (the "May Applications").

55.    Defendants did not respond in writing to Cross River within the first 10 days identifying that any information was missing in the May Applications.

56.    On or about July 14, 2021, Cross River submitted four (4) additional applications for the installations of Small Wireless Facilitates to be placed on new utility poles within the public rights-of-way within the Township's jurisdiction (the "July Applications").

57.    On or about July 23, 2021, Plaintiff received a letter from Thomas R. Kobin, Esq., the Township Attorney of Defendant Township of North Bergen (the "July Letter").

58.    The July Letter set forth various alleged deficiencies in the May Applications and the July Applications and purported to deny all said applications.

59.    On or about September 17, 2021 and October 4, 2021, Plaintiff submitted revised applications to address the issues raised in the July Letter (the "Applications").

60.    The Applications proposed the installation of seventeen (17) Small Wireless Facilities to be placed on new utility poles within the public rights-of-way within the Township's

jurisdiction and two (2) Small Wireless Facilities to be placed on existing utility poles within the public rights-of-way within the Township's jurisdiction.

61.     According to the FCC's Third Report and Order, the filing by Cross River of the Applications with the Township, started the formal application process and the "FCC Shot Clock" on each of the Applications.

62.     Pursuant to 47 C.F.R. § 1.6003(c)(1)(iii) and 47 C.F.R. § 1.6003(d), Defendants had ninety (90) days from the date of submission of the Applications to approve or reject the Applications and, if approved, issue any necessary Permits to Cross River.

63.     Based on the submission date of the Applications on September 17, 2021 and October 4, 2021, the "reasonable period of time" under the Act for Defendants to act on the Applications was 90 days, or December 16, 2021 and January 2, 2022, respectively.

64.     The Township did not notify Cross River that the Applications were incomplete or missing any information as required pursuant to 47 C.F.R. § 1.6003(d)(1) to allow Defendants to toll the Shot Clock.

65.     On or about November 23, 2021, Plaintiff received a letter from the Township Attorney for Defendant Township, Thomas R. Kobin, Esq., which purported to deny the Applications (the "November Letter").

66.     Upon information and the belief, Plaintiff's Applications were not the subject of formal action taken by the Township's Siting Authority, nor was any action taken at a public hearing in compliance with the Open Public Meetings Act. N.J.S.A. 10:4-6, et. seq.

67.     The letter from the Township Attorney does not constitute an official action of the Township's Siting Authority nor a proper denial of Plaintiff's Applications.

68.     The Township Attorney is not the "siting authority" as defined in 47 C.F.R. §1.6002(k).

69.     The letter from the Township Attorney does not constitute official municipal action, nor a proper denial of Plaintiff's Applications, because official action was not taken at a meeting of the Township's siting authority or any agency of Defendant Township on notice to, and open to, the public as required by N.J.S.A. 10:4-6, et. seq.

70.     Defendants did not take any official action on Plaintiff's Applications within the ninety (90) day Shot Clock required by 47 C.F.R. § 1.6003(c)(1)(iii) and 47 C.F.R. § 1.6003(d).

71.     Even if the Township Attorney's letter is deemed to be official municipal action, the stated reasons for the denial of Plaintiff's Applications contained in the letter are invalid, unlawful, arbitrary, capricious and unreasonable because (1) the TCA preempts regulation on the basis of the environmental effects of radio frequency emissions (47 U.S.C. §332(c)(7)(B)(iv); (2) Defendants failed to identify any information missing from the Applications or that the Applications were incomplete within 10 days of their receipt of the Applications as required by 47 C.F.R. §1.6003(d)(1); and (3) the height of each of the proposed facilities is consistent with the height allowed under federal law.

72.     Pursuant to 47 U.S.C. § 332(c)(7)(B)(v), this Action is timely filed within thirty (30) days of the Defendants' November 23, 2021, action, or failure to act.

## COUNT I
### (Unreasonable Delay and Failure to Act on the Applications in
### Violation of 47 U.S.C. § 332(c)(7)(B)(ii), the Shot Clock Order and the 2014 FCC Order)

73.     Cross River repeats and re-alleges each and every paragraph stated above and incorporates those paragraphs by reference, as though fully stated here.

14

74.     47 U.S.C. § 332(c)(7)(B)(ii) provides that, "[a] State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request."

75.     Pursuant to 47 C.F.R §1.6003(a), "a siting authority that fails to act on a siting application on or before the shot clock date for the application . . . is presumed not to have acted within a reasonable period of time."

76.     The Applications submitted by Cross River constitute a request for the placement of small personal wireless service facilities known as Small Wireless Facilities and, as such, Cross River is entitled to the benefits and protections of the Act, FCC Orders, and the FCC's Rules and Regulations with respect to the Applications.

77.     Based on information and belief, each of the facilities referenced in the Applications are within the public rights-of-way owned or under the jurisdiction of the Township.

78.     Pursuant to 47 C.F.R. § 1.6003(d), a determination of incompleteness of a siting application tolls the shot clock only if the State or local government or instrumentality thereof provides notice to the applicant in writing within ten (10) days of the submission of the application, specifically identifying all missing information, and specifying any code provision, ordinance, application instruction, or otherwise publicly-stated procedures that require the information to be submitted.

79.     If the State or local government or instrumentality thereof does not respond in writing within the first ten (10) days of submission of a siting application, and fails to specifically identify what, if any, information is missing, the shot clock is not tolled. *Id.*

80.     Neither the Township nor anyone acting on the Township's behalf notified Cross River in writing within ten (10) days of submission of the Applications that information was missing from same.

81.     Pursuant to 47 C.F.R. § 1.6003(c), the Township's "siting authority," as defined at 47 C.F.R. §1.6002(k), was required to act on Cross River's Applications within 90 days of submission, or no later than December 16, 2021 and January 2, 2022, respectively.

82.     The "siting authority,"  as defined at 47 C.F.R. §1.6002(k), has not taken official action to either approved or rejected Cross River's Applications.

83.     Defendants' failure to meet the applicable timeframe presumptively constitutes a failure to act under Section 332(c)(7)(B)(v), enabling Cross River as applicant to pursue judicial relief.

84.     In the Third Report and Order, the FCC specifically found:

> State or local inaction by the end of the Small Wireless Facility shot clock will function not only as a Section 332(c)(7)(B)(v) failure to act but also amount to a presumptive prohibition on the provision of personal wireless services within the meaning of Section 332(c)(7)(B)(i)(II). Accordingly, we would expect the state or local government to issue all necessary permits without further delay. In cases where such action is not taken, we assume, for the reasons discussed below, that the applicant would have a straightforward case for obtaining expedited relief in court.[22]

---

[22] Third Report and Order at p. 9,148, ¶ 118.

85.     Cross River has commenced this action within thirty (30) days of Defendants' failure to act under the shot clock.

86.     The Defendants' unreasonable delay has included, without limitation:

    a)  the failure to request any purported missing information from the Applications within ten (10) days of submission of the Applications; and,

    b)  the failure to take final action within the "shot clock" timeframe codified in 47 C.F.R. § 16003.

87.     Defendants' failure to act has delayed and prevented Cross River from securing the necessary approvals and permits to construct and install personal wireless service facilities in the public right-of-way located in the Township.

88.     By its acts and omissions, Defendants have violated 47 U.S.C. § 332(c)(7)(B)(ii), as authoritatively interpreted by the FCC and codified in the Code of Federal Regulations.

89.     Under the circumstances, Cross River is entitled to permanent injunctive relief through an order and judgment granting Cross River's Applications and ordering that Defendants: 1) issue all necessary permits, and, 2) authorize Cross River to immediately begin the necessary work to deploy its infrastructure in the public rights-of-way.

**<u>COUNT II</u>**
**(Unlawful Prohibition on Provision of Personal**
**Wireless Services in Violation of 47 U.S.C. § 332(c)(7)(B)(i)(II))**

90.     Cross River repeats and re-alleges each and every paragraph stated above and incorporates those paragraphs by reference, as though fully stated here.

91.     Section 332(c)(7)(B)(i)(II) of the Act provides that the "regulation of the placement, construction, and modification of personal wireless service facilities by any State or

local government or instrumentality thereof . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services."

92.     Under the FCC's Third Report and Order,

> failing to issue a decision up or down during this time is not simply a "failure to act" within the meaning of applicable law. Rather, missing the deadline also constitutes a presumptive prohibition. We would thus expect any locality that misses the deadline to issue any necessary permits or authorizations without further delay. We also anticipate that a provider would have a strong case for quickly obtaining an injunction from a court that compels the issuance of all permits in these types of cases.[23]

93.     Pursuant to the FCC's rulings, including the Third Report and Order, Defendants' unreasonable delay and failure to act on the Applications within the 90-day shot clock period constitutes a presumptive prohibition under Section 332(c)(7)(B)(i)(II).

94.     Defendants' failure to act on the Applications had the effect of prohibiting Cross River from providing personal wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).

95.     Under the circumstances, Cross River is entitled to permanent injunctive relief through an order and judgment granting Cross River's Applications and ordering that Defendants: 1) issue all necessary permits, and, 2) authorize Cross River to immediately begin the necessary work to deploy its infrastructure in the public rights-of-way.

<u>**COUNT III**</u>
**(For Prohibition of Services and Bar to Entry in Violation of 47 U.S.C. § 253(a))**

96.     Cross River repeats and re-alleges each and every paragraph stated above and incorporates those paragraphs by reference, as though fully stated here.

---

[23] Third Report and Order, p. 9,092, ¶13.

97.     47 U.S.C. § 253(a) provides that "No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service."

98.     47 U.S.C. § 253(a) applies to a State or local government's failure to act, which unreasonably delays deployment of a provider's personal wireless service facilities and provision of telecommunications services.

99.     Cross River has been attempting to exercise its right to access the public rights-of-way under exclusive control of the Township to provide telecommunications services.

100.    The Township has unreasonably delayed acting on Cross River's Applications seeking authorization to install Small Wireless Facilities in the public rights-of-way under the jurisdiction of the Township.

101.    The Township's failure to act on the Applications constitutes an unreasonable ongoing delay which has had the effect of prohibiting the ability of Cross River to provide personal wireless facilities and telecommunications services in violation of 47 U.S.C. § 253(a).

102.    Cross River has suffered and will continue to suffer irreparable harm as a result of Defendants' failure to act on the Applications and the resulting delay of Cross River's efforts to deploy its infrastructure within the public rights-of-way under the jurisdiction of Defendants.

103.    Under the circumstances, Cross River is entitled to permanent injunctive relief through an order and judgment granting Cross River's Applications and declaring that Defendants: 1) issue all necessary permits, 2) authorize Cross River to immediately begin the necessary work to deploy its infrastructure in the public rights-of-way.

### COUNT IV
### (Violation of 47 U.S.C. §332(c)(7)(B)(iv) – Improper Regulation
### Based on the Environmental Effects of Radio Frequency Transmissions)

104.    Cross River repeats and re-alleges each and every paragraph stated above and incorporates those paragraphs by reference, as though fully stated here.

105.    The Act prohibits State and local authorities from regulating the construction of personal wireless service facilities "on the basis of the environmental effects of radio frequency transmissions to the extent that such facilities comply with the [Federal Communications Commission's] regulations concerning such emissions." 47 U.S.C. §332(c)(7)(B)(iv).

106.    The letter received by Plaintiff on November 23, 2021, which purported to deny the Applications focused on perceived "environmental effects" of Plaintiff's facilities in violation of 47 U.S.C. §332(c)(7)(B)(iv).

107.    The radio frequency emissions from the Small Wireless Facilities that are the subject of the Applications will comply with the standards adopted by the FCC with respect to human exposure to radio frequency emissions from the facilities.

108.    Defendants' purported reasons for denial of Cross River's Applications were not consistent with proper right-of-way management and were palpably unreasonable, arbitrary, capricious, discriminatory and contrary to the requirements of the Act and Plaintiff's rights thereunder.

109.    As such, Defendants' action is in violation of, and preempted by, Section 332(c)(7)(B)(iv) of the Act, and should be set aside and enjoined by the Court on that basis. Further, this Court should exercise its power to issue an order directing Defendants to approve Cross River's Applications.

## COUNT V
## (For Unlawful Discrimination in Violations of 47 U.S.C. §332(c)(7)(B)(i)(I))

110.    Cross River repeats and re-alleges each and every paragraph stated above and incorporates those paragraphs by reference, as though fully stated here.

111.    Section 332(c)(7)(B)(i)(I) of the Act provides that the "regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof . . . shall not unreasonably discriminate among providers of functionally equivalent services"

112.    Cross River has been attempting to exercise its right to access the public rights-of-way under exclusive control of the Township to provide telecommunications services.

113.    Based on information and belief, various cable and telecommunications providers, including but not limited to Altice USA, Inc., have installed functionally equivalent services in the public rights-of-way under exclusive control of the Township. Allowing other entities to install functionally equivalent services in the public rights-of-way under exclusive control of the Township, while not acting on Cross River's Applications constitutes "unreasonabl[e] discriminat[ion] among providers of functionally equivalent services" in violation of 47 U.S.C § 332(c)(7)(B)(i)(I).

114.    Cross River has suffered and will continue to suffer irreparable harm as a result of Defendants' unlawful discrimination and the resulting delay of Cross River's efforts to deploy its infrastructure within the public rights-of-way under the jurisdiction of Defendants.

115.    Under the circumstances, Cross River is entitled to permanent injunctive relief through an order and judgment granting Cross River's Applications and declaring that Defendants:

1) issue all necessary permits, 2) authorize Cross River to immediately begin the necessary work to deploy its infrastructure in the public rights-of-way.

## COUNT VI
### (Violations of New Jersey Law)

116.    Cross River repeats and re-alleges each and every paragraph stated above and incorporates those paragraphs by reference, as though fully stated here.

117.    Under New Jersey law, a Township Attorney has no independent authority to regulate the public rights-of-way or to decide applications requesting municipal consent to deploy telecommunications infrastructure within the public rights-of-way as that authority is vested in the municipal governing body, which may delegate by ordinance the same to  a "siting authority" as that term is defined at 47 C.F.R. §1.6002(k) .

118.    Upon information and belief, neither Defendant, the North Bergen Township Board of Commissioners nor the Township's siting authority conducted a meeting to review and decide Plaintiff's Applications that was duly advertised and open to the public as required by the Open Public Meetings Act, N.J.S.A. 10:4-6.

119.    Any action taken in violation of the requirements of the Open Public Meetings Act is voidable.  N.J.S.A. 10:4-15.

120.    Cross River is thus entitled to an order and judgment declaring the action denying Plaintiff's Applications void and granting its Applications and mandating that the Township issue all necessary permits and authorizations for Cross River to immediately begin the necessary work to deploy its infrastructure in the public rights-of-way.

## Count VII
### (Violation of Plaintiff's Rights as a Public Utility Under New Jersey Law)

121.    Cross River repeats and re-alleges each and every paragraph stated above and incorporates those paragraphs by reference, as though fully stated here.

122.    As a Public Utility, Cross River is entitled to replace or remove utility poles or underground facility in the public rights-of-way located in a New Jersey Municipality.[24]

123.    Pursuant to N.J.S.A. 48:3-18 through 20, because Cross River is entitled to place its own poles, it is permitted to collocate equipment, including Small Wireless Facilities on poles owned by another utility, such as PSE&G, provided it has an agreement with that other utility.

124.    The Township's refusal to act on Cross River's Applications violates Cross River's rights under New Jersey law.

125.    The Township's refusal to act on Cross River's Applications interferes with Cross River's CPCN issued by the New Jersey Board of Public Utilities.

126.    The Township's refusal to act on Cross River's Applications interferes with Cross River's agreements for access to PSE&G owned and controlled utility poles.

127.    Cross River is thus entitled to an order and judgment granting its Applications and mandating that the Township issue all necessary permits and authorizations for Cross River to immediately begin the necessary work to deploy its infrastructure in the public rights-of-way.

## <u>COUNT VIII</u>
### (For Declaratory Relief and Permanent Injunction)

128.    Cross River repeats and re-alleges each and every paragraph stated above and incorporates those paragraphs by reference, as though fully stated here.

---

[24] N.J. STAT. ANN. § 48:3-17a.

129.   A present and actual controversy has arisen and now exists between the parties regarding their respective legal rights and duties.  Cross River contends that the Defendants' actions and omissions are in violation of the Act, the Shot Clock Order, the 2014 FCC Order, and the Third Report and Order.  Upon information and belief, the Defendants deny such allegations.

130.   Cross River and the public have been and will continue to be adversely affected by the Defendants' actions and omissions.

131.   Accordingly, declaratory relief is appropriate and necessary to adjudicate the extent of Cross River's rights and the Defendants' obligations and authority.

132.   As a result of Defendants' actions and omissions, Cross River has been, and will continue to be, damaged and irreparably harmed absent the relief requested herein.

133.   The harm caused by the Defendants' actions and omissions includes, but is not limited to, an effective prohibition on Cross River's ability to provide personal wireless services at the Sites, and unreasonable delay in taking final (and any) action on the Applications, all impairing Cross River's (a) ability to provide the Carrier with the ability to provide the public with reliable wireless telecommunications service; (b) ability to compete with other providers of telecommunications services; (c) full use of its existing FCC and New Jersey telecommunications authorizations, and or licenses and business investments; and (d) good will and business reputation.

134.   Cross River has a likelihood of success on the merits because it is entitled to access public rights-of-way under both State and federal law and there is no reasonable justification for Defendants' failure to act on Cross River's Applications to install utility poles and personal wireless service facilities in the public rights-of-way.

135.    The harm that Cross River has suffered and continues to suffer from the Defendants' actions and omissions is not reasonably susceptible to accurate calculations and cannot be fully and adequately addressed through an award of damages.

136.    Given that the matter in dispute is Defendants' failure to issue permits and authorize Cross River to install utility poles and personal wireless service facilities in the public rights-of-way, Cross River cannot be made completely whole by damages and has no other adequate remedy at law other than the Court ordering that the Applications be deemed granted or by the Court compelling Defendants to grant Cross River's Applications.

137.    A balancing of the equities tips in Cross River's favor in that it has proceeded throughout the application process in good faith and has submitted all requested forms and documents, while Defendants failed to timely request any missing information from Cross River within the requisite ten (10) day period of time from the submission of the Applications.

138.    In contrast, Defendants have failed to act as required by Federal law.

139.    In contrast to the immediate and irreparable injury being suffered by Cross River, its customers, and the public interest, the Defendants will suffer no significant injury if the Court issues the requested injunction.

140.    As such, Cross River is entitled to a judgment and order of permanent injunction compelling Defendants to issue permits and any other approvals required to allow Cross River to install utility poles and personal wireless service facilities in the public rights-of-way that are the subject of this Action.

## PRAYER FOR RELIEF

**WHEREFORE**, Cross River respectfully requests that, pursuant to 47 U.S.C. § 322(c)(7)(B)(v), the Court hear and decide this action on an expedited basis, and issue an Order and Judgment in its favor as follows:

a)  finding and declaring that Defendants' failure to act upon Cross River's Applications within a reasonable time constitutes a violation of 47 U.S.C. § 332(c)(7)(B)(ii);

b)  finding and declaring that Defendants' failure to act upon Cross River's Applications within a reasonable time, pursuant to 47 C.F.R §1.6003(c), amounts to an illegal and unreasonable delay in violation of 47 U.S.C. § 332(c)(7)(B)(ii);

c)  finding and declaring that Defendants' failure to act upon Cross River's Applications have prohibited or had the effect of prohibiting Cross River from providing personal wireless services in violation of 47 U.S.C. § 253(a) and 47 U.S.C. § 332(c)(7)(B)(i)(II);

d)  finding and declaring that Defendants' failure to act upon Cross River's Applications constitutes unreasonable discrimination against Cross River in the management of the public rights-of-way and in the provision of functionally equivalent personal wireless and telecommunications services in violation of 47 U.S.C. § 253(c) and 47 U.S.C. § 332(c)(7)(B)(i)(II);

e)  finding and declaring that Defendants' failure to failure to act upon Cross River's Applications violates New Jersey law;

f)  finding and declaring that Defendants violated the Open Public Meetings Act,

N.J.S.A. 10:4-6 and failed to take official action and that the letters sent by the Township Attorney were not official action of the siting authority, or the Township, and are null and void;

g)   finding and declaring that Defendants denial based on perceived "environmental effects" of Plaintiff's facilities is a violation of 47 U.S.C. §332(c)(7)(B)(iv);

h)   granting the Applications and issuing an order mandating or an order requiring that Defendants immediately issue, pursuant to federal and New Jersey law, all approvals, necessary permits and authorizations for Cross River to immediately install the utility poles and small wireless service facilities, and associated infrastructure in the Township controlled public-rights-of-way as set forth in the Applications;

i)   awarding Cross River its damages, reasonable attorneys' fees, costs, disbursements, and other expenses of this action as permitted by law; and

j)   granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

PRICE MEESE SHULMAN & D'ARMINIO, P.C

By:   /s/ *Gregory D. Meese*
        Gregory D. Meese, Esq. GM8738
        50 Tice Boulevard
        Woodcliff Lake, New Jersey 07677
        (201)391-3737

December 17, 2021                        *Attorneys for Plaintiff Cross River Fiber LLC*